UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KERRIE MOORE and KELLIE MOORE,

              Plaintiffs,

    v.

KING COUNTY FIRE PROTECTION
DISTRICT NO. 26, et al.,

              Defendants.

CASE NO. C05-442JLR

ORDER

## I.  INTRODUCTION

This matter comes before the court on a motion (Dkt. # 37) from King County Fire Protection District No. 26 and the individual Defendants who work for it (collectively, the "District") seeking summary judgment against Plaintiff Kerrie Moore's retaliation claim under the Washington Law Against Discrimination ("WLAD").  The court finds the motion appropriate for disposition on the basis of the parties' briefing and accompanying declarations.  For the reasons stated below, the court DENIES the motion.

## II.  BACKGROUND

Mr. Moore worked as a District firefighter until his discharge in April 2004.  In 1996, Mr. Moore watched Assistant Fire Chief David Lawrence make inappropriate

ORDER – 1

sexual comments to a female employee.[1]  Mr. Moore provided a witness statement to

District personnel investigating the incident.  From then on, Mr. Moore asserts that Mr.

Lawrence "began to make [his] work life miserable" by, among other things,

"constantly . . . humiliating" him.  Moore Decl. ¶ 7.

In support of this broad assertion, Mr. Moore describes several incidents, all of

which appear to have occurred within three years of the 1996 harassment incident.[2]  At an

undisclosed time, Mr. Lawrence required Mr. Moore to provide a formal "write up" of a

minor incident involving another firefighter who left dirty coffee cups in a fire station.

Id. ¶ 7(a).  In 1997, Mr. Lawrence participated in reassigning Mr. Moore to another shift,

a change that Mr. Moore did not request.  Id. ¶ 7(b).  In 1998, Mr. Lawrence again forced

Mr. Moore to provide a write-up, this time of a conversation he had with a District Fire

Commissioner.  Id. ¶ 7(c).  In 1999, Mr. Lawrence suspended Mr. Moore for two days

after an on-duty "heated verbal exchange" between Mr. Moore and another firefighter.

Id. ¶ 7(d).  At an undisclosed time, Mr. Lawrence exacerbated a minor incident in which

Mr. Moore struck the awning of a local business with a District vehicle, and placed a

warning letter in Mr. Moore's file.  Id. ¶ 7(e).  Finally, Mr. Lawrence threatened to

discipline Mr. Moore for shouting at a firefighter during an emergency call.  Id. ¶ 7(f).

Mr. Moore describes no other incidents with Mr. Lawrence until 2004.  That year,

Mr. Moore returned to work following an extended absence related to a debilitating

---

[1]As the court must view the facts underlying this summary judgment motion in the light
most favorable to Mr. Moore, the court's recitation of the facts assumes the truth of all
allegations for which Mr. Moore has provided evidence.  Porter v. Cal. Dep't of Corr., 383 F.3d
1018, 1020 & n.1 (9th Cir. 2004), amended by 419 F.3d 885 (9th Cir. 2005).

[2]Mr. Moore provides no dates for several of the incidents he describes.  From the
context of his declaration, the court infers that they occurred roughly contemporaneously with
other incidents between 1996 and 2000.

ORDER – 2

kidney condition.  Upon his return, the District's chief required him to engage in training, drilling, and tests to verify that he was ready to return to duty.  Id. ¶ 7(g).  Mr. Lawrence was on vacation during this process.  When he returned, he questioned whether Mr. Moore had completed the required testing.  Id. ¶ 7(h).  Although training chief Victor Pennington certified that Mr. Moore had completed the exercises, Mr. Lawrence refused to allow Mr. Moore to return to duty, and required him to submit to more drills and testing, including repeating tests he had just taken.  Id.  According to Mr. Moore, no other firefighter returning from a leave had been subjected to a similar battery of drills and tests.  Id. ¶ 7(g).  Mr. Lawrence also restricted Mr. Moore from driving District vehicles.  Id. ¶ 7(i).  During the extra drilling, Mr. Moore suffered an injury that required surgery.  The District terminated him while he was recuperating from the injury.  Id. ¶ 7(h).  Mr. Moore does not allege that Mr. Lawrence was responsible for the termination decision.

Mr. Moore alleges that Mr. Lawrence wanted to retaliate against him for acting as a witness in the 1996 sexual harassment investigation, and that this motivation explains his behavior in each of these incidents.  As evidence, he offers the testimony of a District employee who states that Mr. Lawrence told him that he would "get" Mr. Moore for his participation in the investigation.  Id. ¶ 5.  According to another District employee, Mr. Lawrence believed that the 1996 incident disqualified him from being able to take a test for a promotion to Fire Chief, and he made numerous remarks over the years indicating that he held a grudge against Mr. Moore and others involved in the incident.[3]

---

[3]Much of this testimony comes from Mr. Pennington, a longtime District employee.  The District asks the court to strike his testimony as "hearsay and speculation."  The hearsay objection is unfounded, as Mr. Pennington's testimony about Mr. Lawrence's statements is admissible under Fed. R. Evid. 801(d)(2).  The speculation objection also fails.  Mr. Pennington is permitted to state his conclusions about what Mr. Lawrence's statements and behavior

ORDER – 3

1

### III.  ANALYSIS

2

3        The parties' briefing reveals substantial confusion over what type of retaliation

4  claim Mr. Moore has brought, and the court must remedy that confusion before deciding

5  the District's motion.  Because of this confusion, and because neither party applied the

6  correct legal framework, the court is forgoing oral argument on this motion.

7  **A.       Title VII Creates Two Mutually Exclusive Causes of Action for Retaliatory
          Conduct:  Retaliation and Retaliatory Hostile Work Environment.**

8        Under Title VII of the Civil Rights Act of 1964, there are two ways for an

9  employee to recover when an employer retaliates against him for engaging in a protected

10  activity.  The first is a basic retaliation claim, which requires a showing that (1) the

11  employee "engaged in a protected activity," (2) the "employer subjected him to an

12  adverse employment action," and (3) "a causal link exists between the protected activity

13  and the adverse action."  Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000).  The

14  second is a claim for a retaliatory hostile work environment.  Id. at 1244-45.  Harassing

15  an employee for engaging in protected activity is no different than harassment based on

16  race or gender.  Id. at 1245.  As with racial and sexual harassment, the alleged

17  harassment must be "sufficiently severe or pervasive to alter the conditions of the

18  victim's employment . . . ."  Id. (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21

19  (1993)).

20

21        The differences between a retaliation claim and a retaliatory hostile work

22  environment claim are critical to the resolution of this motion.  The Supreme Court

23  announced in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), that the

24  statute of limitations analysis for Title VII discrimination claims is different than the

25

26

27

28  indicated to him about his attitude toward Mr. Moore, as such conclusions are well within the
    ken of a percipient witness.  See George Fisher, Evidence 588-590 (2002).

ORDER – 4

analysis for hostile work environment claims.  The court reasoned that a "discrete retaliatory or discriminatory act" occurs on the day it happens, and thus the statute of limitations begins to run immediately.  Id. at 110.  If a party does not timely bring suit for "discrete discriminatory acts," then they "are not actionable."  Id. at 113.  "Hostile environment claims," however, "are different in kind from discrete acts."  Id. at 115.  Because a hostile work environment claim "is composed of a series of separate acts that collectively constitute" an unlawful employment practice, the Court held that as long as the claim is timely as to one of those acts, the entire series is actionable.  Id. at 117.

Morgan compels the conclusion that the universe of "discrete acts," each of which could support a separate retaliation claim, is mutually exclusive of the universe of acts that can comprise a hostile work environment claim.  In Morgan, the term "discrete" carries a specialized meaning.  Although a hostile work environment claim is composed of a series of acts that are "discrete" in the ordinary sense, they are not "discrete" in the sense that the Morgan Court used the word.  Under Morgan, a "discrete act" of retaliation or discrimination is one that is "not actionable" unless the employee timely sues upon it, even if the act is "related to acts alleged in timely filed charges."  Id. at 113.  By contrast, the component acts of a hostile work environment are actionable so long as the employee timely sues as to at least one of them.  Id. at 117.  An act is thus either "discrete" and gives rise to a retaliation or discrimination claim, or it is a component act in a hostile work environment claim.  It cannot be both.  For that reason, a court examining a hostile work environment claim must "sift[]" out "discrete," actionable incidents and judge the claim solely on evidence of "non-discrete" acts.  Porter v. Cal. Dep't of Corr., 383 F.3d 1018, 1028 (9th Cir. 2004), amended by 419 F.3d 885 (9th Cir. 2005).

Morgan provides guidance in categorizing conduct as actionable discrimination or a component of a hostile work environment claim.  Conduct "such as termination, failure

ORDER – 5

to promote, denial of transfer, or refusal to hire [is] easy to identify" as actionable discrimination.  Id. at 114.  The Morgan Court gave other examples of acts that fall in the realm of immediately actionable discrimination, including suspending an employee, charging him with rule violations, denying him training, and falsely accusing him of improper conduct.  Id.  A hostile work environment claim, on the other hand, is made up of conduct such as "discriminatory intimidation, ridicule, and insult[s]."  Id. at 116.

The Ray court provides similar guidance in drawing the line between acts that give rise to a retaliation claim and acts that can constitute a hostile work environment claim. The court announced that an "adverse employment action" sufficient to support a retaliation claim is one "reasonably likely to deter employees from engaging in protected activity," and clarified that some retaliatory conduct, including "offensive statements," would not meet this standard.  Ray, 217 F.3d at 1243.  Reviewing prior cases, the court noted a variety of potential adverse actions, including unwanted lateral transfers, unfavorable job references, exclusion from training opportunities, denial of secretarial support, changes in work schedule, demotions, additional administrative burdens, and suspensions.  Id. at 1241-42.  On the other hand, "mere ostracism by coworkers" is not an adverse employment action.  Id. at 1241.  Similarly, derogatory and humiliating statements are not adverse employment actions, and are actionable only if they are sufficiently severe and pervasive to constitute a hostile work environment.  Id. at 1245.

**B.    A Retaliatory Hostile Work Environment Claim is Viable Under the WLAD.**

Before applying these principles to Mr. Moore's allegations, the court must first address the District's contention that there is no cause of action for retaliatory hostile work environment under the WLAD.  Focusing on federal law, the District concludes that Morgan somehow undermines the Ray court's recognition of a cause of action for a retaliatory hostile work environment.  No other court has reached this conclusion,

ORDER – 6

including the Morgan Court, which had no occasion to consider Ray or even mention it. The District reasons that the Morgan Court held that "[h]ostile environment claims are different in kind from discrete acts," and because Mr. Moore alleges a series of discrete acts, this court can only treat those acts as retaliation claims.  This reasoning founders for two reasons.  First, even on its own terms, the District's syllogism does not exclude the possibility of a retaliatory hostile work environment claim.  It only repeats the Morgan Court's observation that a retaliation claim is different from a hostile work environment claim.  Second, it ignores that not every discrete act of discrimination is the sort of "discrete act" that the Morgan Court identified as the core of a retaliation claim.  As noted above, an improperly motivated act that is offensive without rising to the level of an adverse employment action is "discrete" in the ordinary sense of the word, but not in the sense that the Morgan Court used it.  Compare 536 U.S. at 115 (describing hostile work environment claims as "different in kind from discrete acts") with 536 U.S. at 117 (noting that a hostile environment claim is composed of "separate acts").

The court holds that a Washington court would recognize a retaliatory hostile work environment cause of action just as federal courts have.  No Washington court has had occasion to decide the issue.  Nonetheless, Washington courts interpreting the WLAD often turn to "federal discrimination cases" whose reasoning "further[s] the purposes and mandates of state law" Antonius v. King County, 103 P.3d 729, 735 (Wash. 2004) (adopting Morgan as rule for hostile environment claims under the WLAD).  The WLAD provision that authorizes retaliation claims makes it unlawful to "discharge, expel, *or otherwise discriminate* against any person because he or she has opposed any practices forbidden by this chapter . . . ."  RCW § 49.60.210 (emphasis added).  Construing "discriminate" broadly to encompass a hostile work environment is consistent with the WLAD's mandate to liberally construe it to effectuate its broad

ORDER – 7

remedial purposes.  RCW § 49.60.020; <u>Antonius</u>, 103 P.3d at 735.  Indeed, Washington's recognition of gender-motivated and race-motivated hostile work environment claims results from construing "discriminate" broadly in another WLAD provision.  <u>Glasgow v. Georgia-Pacific Corp.</u>, 693 P.2d 708, 711 (Wash. 1985) (citing RCW §§ 49.60.020, 49.60.180(3), and cases interpreting Title VII).  The court concludes that a Washington court confronting a retaliatory hostile work environment claim would take the same approach.

**C.     One Portion of Mr. Moore's Retaliation Claim Survives Summary Judgment, but His Retaliatory Hostile Work Environment Claim Does Not.**

The court must now decide if Mr. Moore has a viable retaliation or retaliatory hostile work environment claim.  In doing so, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party.  <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  When the moving party meets its burden, the opposing party must show that there is a genuine issue of fact for trial.  <u>Matsushita Elect. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  The opposing party must present significant and probative evidence to support its claim or defense.  <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d 1551, 1558 (9th Cir. 1991).  For purely legal questions, summary judgment is appropriate without deference to the non-moving party.

**1.     Mr. Moore's Retaliation Claim is Timely as to Only One "Discrete" Act.**

The first step in the court's analysis is to categorize the incidents between Mr. Moore and Mr. Lawrence as either "discrete" acts that support a retaliation claim or acts

ORDER – 8

that can only support a retaliatory hostile work environment claim.  See Porter, 383 F.3d at 1027-28.  As noted above, those incidents occurred within three years of Mr. Moore's witness statement in the harassment investigation, with the exception of Mr. Lawrence's involvement in training, drilling, and testing Mr. Moore after he returned to work in 2004.

Several of Mr. Lawrence's acts are, as a matter of law, "discrete" acts that are potentially actionable only as retaliation claims.  When Mr. Lawrence assigned Mr. Moore to a new shift in 1997, he engaged in an adverse employment action.  Ray, 217 F.3d at 1242 (noting that changes in schedule are adverse employment actions).  Suspending Mr. Moore in 1999 was also an adverse employment action.  Id. at 1241; Morgan, 536 U.S. at 114.  Mr. Lawrence took another adverse employment action when he placed a warning letter in Mr. Moore's file after the incident where his vehicle struck an awning.  Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 848 (9th Cir. 2004); see also Ray, 217 F.3d at 1241 (noting that "unwarranted negative job evaluations" are adverse employment actions).  Finally, Mr. Lawrence's decision to subject Mr. Moore to additional training, drilling, and testing in 2004 was an adverse employment action.  There is no doubt that forcing a person to take on additional job responsibilities (drilling and training), in addition to being unreasonably forced to take tests to maintain one's job, is reasonably likely to deter employees from engaging in protected activity.  Ray, 217 F.3d at 1241 (noting that forcing employee to "go through several hoops" to obtain job benefits was an adverse employment action).

As to all but the last of these actions, Mr. Moore's retaliation claim is untimely.  A plaintiff must bring a WLAD action within three years.  Antonius, 103 P.3d at 732.

ORDER – 9

Under the rationale of Morgan, as adopted in Antonius,[4] a plaintiff can recover damages for a "discrete" act (i.e., an adverse employment action) only by suing within the limitations period.  Mr. Moore filed this complaint in March 2005, and thus only his retaliation claim based on Mr. Lawrence's 2004 conduct is actionable.

### 2.    Mr. Moore's Remaining Allegations Are Not Actionable as Retaliation or as a Retaliatory Hostile Work Environment.

Mr. Moore has no cause of action for his remaining allegations of retaliatory conduct, regardless of whether the remaining acts that he describes constitute adverse employment actions or component acts in a hostile environment claim.  The remaining three acts involve Mr. Lawrence threatening Mr. Moore with discipline or forcing him to "write up" incidents that allegedly did not warrant a write-up.[5]  Assuming that one or more of these acts constitutes an adverse employment action, Mr. Moore has not timely filed suit as to those acts.  Any retaliation claim for those acts would untimely, as each act undisputedly took place more than three years before Mr. Moore brought this action.

Alternatively, assuming that each remaining act is potentially a component of a retaliatory hostile work environment claim, this claim cannot survive summary judgment. Following federal law, Washington courts require a hostile environment plaintiff to show

---

[4]The Antonius court only had occasion to formally adopt the portion of Morgan that held that a hostile work environment is actionable so long as it is timely as to at least one component act.  Antonius, 103 P.3d at 736.  In following Morgan, however, the court rejected the continuing violation doctrine.  Id.  Because the Morgan Court rejected that doctrine in holding that "discrete" discriminatory acts are not actionable if time barred, 536 U.S. at 113-14, the court assumes that a Washington court would reach the same holding.

[5]Mr. Moore's declaration contains several broad assertions that Mr. Lawrence continually acted to harass, embarrass, or humiliate him.  The court cannot accept these allegations as evidence except to the extent that they are substantiated.  Vasquez v. County of Los Angeles, 349 F.3d 634, 642-643 (9th Cir. 2004) (disregarding assertions of "continual[] harass[ment]" and focusing on "specific factual allegations" of incidents of harassment).

ORDER – 10

that the conduct complained of is sufficiently severe and pervasive to affect the terms and conditions of employment.  Washington v. Boeing Co., 19 P.3d 1041, 1046-47 (Wash. 2000).   In determining whether a plaintiff meets this requirement, the court must consider "the frequency and severity of the discriminatory conduct," "whether it is physically threatening or humiliating, or a mere offensive utterance," and "whether it unreasonably interferes with an employee's work performance."  Id. (citing Harris, 510 U.S. at 23).

        Mr. Lawrence's remaining conduct does not meet this standard as a matter of law. First, there is no evidence of any harassing conduct between 1999 and 2004.  This mitigates sharply against a finding that the harassment was pervasive.  Faragher v. City of Boca Raton, 524 U.S. 775, 787 n.1 (1998) (approving Second Circuit authority holding that harassment incidents "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive") (citation omitted).  Even in the few years immediately following Mr. Moore's protected activity, the conduct was not, from an objective point of view, severe, offensive, or humiliating.  Adams v. Able Bldg. Supply, Inc., 57 P.3d 280, 284 (Wash. Ct. App. 2002) (noting that a hostile work environment must exist both in the eyes of the plaintiff and in the eyes of a reasonable person in the plaintiff's position).  Mr. Lawrence's conduct was perhaps petty and annoying, but the court finds that no reasonable jury would find it objectively severe or

ORDER – 11

pervasive enough to alter the terms and conditions of Mr. Moore's employment.[6]  See

Washington, 19 P.3d at 1047 (granting summary judgment).

### 3.    Mr. Moore's Retaliation Claim Based on Mr. Lawrence's 2004 Conduct Can Proceed to a Jury.

Having narrowed Mr. Moore's potential recovery to a single claim for retaliation

based on Mr. Lawrence's 2004 conduct, the court must now determine if that claim

survives summary judgment.  To withstand summary judgment under the WLAD, Mr.

Moore must provide some evidence to meet the shifting burdens of proof he would face

at trial.  First, he must establish a prima facie case of a statutorily protected activity, an

adverse employment action, and a causal link between the activity and the adverse action.

Hudon v. West Valley Sch. Dist. No. 208, 97 P.3d 39, 46 (Wash. Ct. App. 2004) (citing

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973)).  A prima facie case

shifts the burden to the District to "produce admissible evidence of a plausible

nonretaliatory reason for the adverse action."  Id.  If the District meets this burden, then

Mr. Moore must put forth evidence that the plausible reason is pretextual.  Id.  The court

---

[6]This would be a closer case if the court could consider Mr. Lawrence's "discrete,"
actionable conduct over this time period as component acts in the allegedly hostile work
environment.  Under Ninth Circuit law, however, the court cannot do so.  Porter, 383 F.3d at
1027 ("If the flames of an allegedly hostile environment are to arise to the level of an actionable
claim, they must do so based on the fuel of timely non-discrete acts.").  The Porter court's
analysis of Morgan compelled it to judge a hostile work environment based solely on "non-
discrete acts" that could not support an independent discrimination claim.  Id. at 1028.  A court
can consider discrete acts to help "plac[e] non-discrete acts in the proper context," id. at 1027
n.4 (citing Morgan, 536 U.S. at 113), but in doing so, it must not ignore instructions from
Morgan that "discrete discriminatory acts are not actionable if time barred, even when they are
related to acts alleged in timely filed charges."  Porter, 383 F.3d at 1027 (quoting Morgan, 536
U.S. at 113).  This court has considered Mr. Moore's evidence of discrete retaliatory conduct to
give context to his evidence of non-discrete acts, and finds that the non-discrete acts are
nonetheless insufficiently severe and pervasive to constitute a hostile work environment.

ORDER – 12

must not grant summary judgment "where there are conflicting reasons or contrary

evidence sufficient to create competing inferences." Id. (citing Renz v. Spokane Eye

Clinic, P.S., 60 P.3d 106, 112 (Wash. Ct. App. 2002)).

Mr. Moore has put forth sufficient evidence to establish a prima facie case of

retaliation.  No one disputes that providing a witness statement in the 1996 investigation

of Mr. Lawrence was a protected activity.  As the court noted above, forcing Mr. Moore

into additional training, drilling, and testing is an adverse employment action.  The only

question is whether Mr. Moore has offered enough evidence of a causal link between his

1996 witness statement and Mr. Lawrence's 2004 conduct.  The court finds that he has.

There is substantial evidence that would permit a jury to conclude that Mr.

Lawrence bore a grudge against Mr. Moore that lasted from 1996 through 2004.  There is

direct evidence that Mr. Moore's actions permanently prevented Mr. Lawrence from

being promoted to Fire Chief.  There is direct evidence that this rankles Mr. Lawrence,

even today.  In addition, while Mr. Lawrence's conduct toward Mr. Moore from 1996

through 1999 is not actionable, it is admissible as evidence of retaliatory motive.

Morgan, 536 U.S. at 113 (noting that evidence of prior acts for which a plaintiff does not

timely sue can serve as "background evidence in support of a timely claim").  On this

evidence, a jury could find that Mr. Lawrence carried an eight-year grudge, and that this

grudge was at least a partial motivation for his conduct in 2004.[7] Washington, 19 P.3d at

_____

[7]The District points the court to authority finding no causal link between protected
activity and allegedly retaliatory conduct where too much time has passed between the events.
District Mot. at 4-6.  None of those cases, however, presents a situation like this one, where
there is substantial evidence showing an ongoing retaliatory motive.  See Porter, 383 F.3d at
1030 ("Although a lack of temporal proximity may make it more difficult to show causation,
circumstantial evidence of a pattern of antagonism following the protected conduct can also give
rise to the inference.") (internal quotation omitted).

ORDER – 13

1049 (noting that a plaintiff need only show that retaliation is a "substantial factor"

behind the adverse action); see also Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220

(9th Cir. 1998) (holding that degree of proof necessary to establish prima facie case for

summary judgment is "minimal and does not even need to rise to the level of a

preponderance of the evidence").

The court assumes, without deciding, that the District has produced sufficient

evidence of a legitimate explanation for Mr. Lawrence's 2004 actions.  The District

contends that after Mr. Moore's long absence from work, it had reason to suspect that his

physical skills had deteriorated, and that public safety demanded that he receive

additional training, drilling, and testing.

Mr. Moore, in turn, has produced sufficient evidence to rebut the District's

explanation.  There is evidence that no other firefighter returning from a leave of absence

was subject to the same rigorous drilling, training, and testing regimen.  Moreover, Mr.

Lawrence's refusal to believe that Mr. Moore had completed the required training and

forcing him to repeat it supports the inference that his motivation was to retaliate against

Mr. Moore rather than advance legitimate safety concerns.  This evidence is sufficient to

carry Mr. Moore's retaliation claim to a jury.

## IV.  CONCLUSION

For the foregoing reasons, the court DENIES the District's motion for summary

judgment on Mr. Moore's retaliation claim (Dkt. # 37).  As noted above, however, the

only cause of action that Mr. Moore has for retaliatory conduct is one based on Mr.

Lawrence's conduct toward him in 2004.

Before concluding, the court addresses Plaintiffs' surreply to this motion.  In its

opening brief, the District assumed that Mr. Moore had only a retaliation claim.  There is

no obvious reason for this assumption, as Plaintiffs' first amended complaint explicitly

ORDER – 14

states a cause of action for retaliatory hostile work environment (¶ 5.1.2) in addition to retaliation (¶ 5.1.1).  Regardless, the District had ample reason in its opening brief to introduce evidence from Mr. Lawrence rebutting Mr. Moore's allegations.  It did not.  In fact, it relied on no evidence from any witness.  In their opposition brief, Plaintiffs seemed to disavow a retaliation claim entirely, focusing solely on their retaliatory hostile work environment allegation.  Pltfs.' Opp'n at 2 ("[D]efendants address Mr. Moore's retaliation claim as if it were a claim for a discrete instance of retaliation.  In reality, Mr. Moore has asserted a retaliatory hostile work environment claim . . . .").  Plaintiffs incorrectly stated the legal standard for such a claim.  Id. at 15 (stating that Mr. Moore must "satisfy the requirements for both a claim of retaliation and a hostile work environment claim").  In its reply brief, the District introduced a host of new arguments to meet the arguments Plaintiffs raised in opposition, and introduced evidence from Mr. Lawrence for the first time.  In a surreply, Plaintiffs noted that they had no opportunity to respond to these new arguments and evidence.

As the parties show no willingness to work together to lead themselves from this quagmire, the court has taken the following path.  The court has relied on the District's new arguments and evidence solely to the extent that Plaintiffs suffer no prejudice.  In particular, the court has considered the District's new legal arguments and finds that Mr. Moore suffers no prejudice from them.  As to the District's new evidence, the court has considered it and finds it insufficient to support judgment as a matter of law, and thus it has not prejudiced Plaintiffs.  The only argument that the court will not reach is the District's contention that only Mr. Lawrence is a proper Defendant in Plaintiffs' retaliation claim.  Plaintiffs had no opportunity to address this argument, and the court declines to resolve it.

ORDER – 15

1   Dated this 31st day of October, 2005.

2

3

4   _____
    JAMES L. ROBART
5   United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER – 16