UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KERRIE MOORE and KELLIE MOORE,<br><br>Plaintiffs,<br><br>v.<br><br>KING COUNTY FIRE PROTECTION DISTRICT NO. 26, et al.,<br><br>Defendants. | CASE NO. C05-442JLR<br><br>ORDER |

## I. INTRODUCTION

This matter comes before the court on two motions for summary judgment (Dkt. ## 36, 45) from several individual Defendants who work for the King County Fire Protection District No. 26 (the "District"). Although Plaintiffs requested oral argument, the court finds the motions appropriate for disposition on the basis of the parties' briefing and declarations. For the reasons stated below, the court DENIES the motions.

## II. BACKGROUND

Mr. Moore worked as a District firefighter until his discharge in April 2004. Earlier that year, Mr. Moore returned to work following an extended absence related to a debilitating kidney condition. Upon his return, the District required him to engage in training, drilling, and tests to verify that he was ready to return to duty. During the training, Mr. Moore suffered an injury that required surgery.

ORDER – 1

In late March 2004, while Mr. Moore was still recuperating from his surgery, District Chief James Polhamus sent Mr. Moore a letter summoning him to a "pre-disciplinary meeting" on April 7, 2004 where they would discuss terminating him for "dereliction of duty." Mr. Moore attended the meeting.

Later that evening, at a regularly scheduled public meeting of the District's Board of Commissioners, Mr. Polhamus met in closed session with the Commissioners. The only participants in the closed session were Mr. Polhamus, an attorney representing the District, and three Commissioners: James Fossos, Jerry Harris, and Gary Bollinger. The Commissioners returned from the closed session and voted to terminate Mr. Moore. Mr. Fossos voted against the termination. The District terminated Mr. Moore the next day.

After his termination, Mr. Moore claimed unemployment benefits. In investigating the claim, a representative from the Washington Employment Security Department contacted Mr. Polhamus to discuss Mr. Moore's employment. Mr. Moore alleges that Mr. Polhamus made defamatory statements about him during this conversation.

In addition to a host of state law claims, Mr. Moore brought claims against Mr. Polhamus and each of the three Commissioners under 42 U.S.C. § 1983. Mr. Moore's complaint stated that his § 1983 claim arose from conduct of Defendants "Polhamus, Harris, Bollinger, and Fossos" that "deprived Moore of his constitutionally protected property and liberty interests (both procedural and substantive) under the Due Process Clause of the Fourteenth Amendment . . . ." First Amended Complaint ¶ 5.6.1.

The District now brings two motions seeking qualified immunity from Mr. Moore's claims: one addressing the claims against the three Commissioners, and the other addressing claims against Mr. Polhamus and Assistant Fire Chief David Lawrence.

ORDER – 2

## III.  ANALYSIS

Ordinarily, the court would proceed with an analysis of the District's motions under the familiar summary judgment standard. The posture of these motions, however, makes it virtually impossible to do so. Before reviewing the motions, it is necessary to remark on the "qualified immunity" defense on which both motions are based.

The type of qualified immunity that garners the vast majority of federal courts' attention is a defense to a § 1983 claim. Section 1983 creates a remedy for one who suffers a violation of rights under the Constitution or other laws at the hands of a person acting under the color of state law. Qualified immunity provides a defense in a § 1983 action where a reasonable person in the defendant's shoes could have mistakenly believed that the law did not prohibit his conduct. Saucier v. Katz, 533 U.S. 194, 205 (2001).

Washington recognizes various qualified immunity defenses as well. Outside the context of a § 1983 action, however, the policy and standards underlying state law qualified immunity vary dramatically depending on the cause of action alleged. Staats v. Brown, 991 P.2d 615, 627 n.9 ("State qualified immunity, however, stems from quite different legal principles than [immunity under § 1983]"). McKinney v. City of Tukwila, 13 P.3d 631, 640 (Wash. Ct. App. 2000) ("State law qualified immunity rests on a different analysis than does qualified immunity under section 1983.").

With these general notes in mind, the court turns to the motions before it. In each motion, Defendants seem to believe that a generalized discussion of federal qualified immunity, coupled with sparse citation to Washington cases that discuss qualified immunity, is sufficient to win summary judgment against every state and federal claim that these five individual Defendants face.

For example, Defendants argue that Mr. Lawrence is "immune" from Mr. Moore's state law claims against him. Defendants recognize that Mr. Lawrence is not named in

ORDER – 3

Mr. Moore's § 1983 claims, and yet they argue that "[f]or the same reasons that the Chiefs are immune from federal civil rights claims for their quasi-judicial acts, they are also entitled to the same immunity protections from any state law claim raised." Defs.' Mot. at 14. Defendants reach this conclusion in less than half a page of argument. In that half-page, they make no mention of what state law claims Mr. Lawrence faces. They offer no discussion of any state law immunity that is applicable to those claims. Although they cite authority establishing immunities for prosecutors and judges, they make no effort to explain how those immunities could apply to Mr. Lawrence.

The bulk of the motion addressing Mr. Lawrence and Mr. Polhamus is focused on federal qualified immunity. Defendants begin with a recent Supreme Court pronouncement on the procedure for addressing qualified immunity. Defs.' Mot. at 4 (citing Saucier). Unfortunately, the remainder of the motion provides the court with no basis for deciding whether Mr. Polhamus is entitled to qualified immunity. Although Defendants recognize that Mr. Polhamus faces "a constitutional claim" (Defs.' Mot. at 5), they never explain what that claim is – despite clear notice from Plaintiffs' first amended complaint of the four types of due process claims that Mr. Moore brought. Whereas Mr. Polhamus faces claims based on a violation of Mr. Moore's due process rights under the Fourteenth Amendment, Plaintiffs cite cases discussing the lawfulness of arrests, searches, and seizures under the Fourth Amendment, and claims under the Americans with Disabilities Act and Rehabilitation Act of 1973. Where Defendants cite cases addressing due process claims, they do so without ever explaining how they apply to Mr. Polhamus.

The motion addressing the three Commissioners suffers from the same problems, but deserves special attention because of its odd statement that, in this action, "there was no clearly established right for an individual seeking to be appointed as a volunteer

ORDER – 4

Guardian ad Litem of abused or neglected children to rebut information that arises during a County's selection process." Defs.' Mot. at 7.  This is rather curious, because this action does not involve guardians ad litem, neglected children, or any selection process. A review of the court's electronic docketing system shows that Defendants' statement and the paragraph in which it appears were lifted wholesale from a brief that Defendants' counsel wrote in a different action before a different judge in this district.  See Case No. 03-5335RBL, Dkt. # 28 at 12-13.[1]

In response to Defendants' motions asserting state and federal qualified immunity for unidentified "constitutional claims," Plaintiffs responded with a brief that explained the nature of each constitutional claim Mr. Moore was making.  The brief also explained why Defendants fell short of establishing their right to qualified immunity.  Defendants responded in their reply brief with arguments that they did not make in their original motions, and evidence from the individual Defendants that was not part of the original motions.  Plaintiffs filed a surreply asking the court not to consider the new material.  The court grants their request.

Without addressing the new arguments and evidence that Defendants raised in their reply briefs, the court has no basis for granting Defendants' motions.  It is not the court's practice to devote orders to a discussion of counsel's briefing rather than the substantive merits of the motion.  In this case, the court is left with little choice. Defendants' recipe in these motions seems to be to note that there are unspecified

---

[1]The same review answers another question before the court:  Who is the mysterious "Mr. Brees" to whom Defendants refer in one of their motions? Defs.' Mot. at 7.  He was the plaintiff in another action that Defendants' counsel brought, and he has no involvement whatsoever with this action.  The court has no quarrel with counsel using old briefs when composing new ones, but suggests that (at a minimum) it change the names of the parties to reflect the case that is before the court.

ORDER – 5

"constitutional claims" and state law claims, note that federal and state law provide for qualified immunity defenses, and hope that the court will ferret out the specific claims and connect them to specific authority for a qualified immunity defense for each claim. This is indeed a recipe, but not a recipe for success. The court does not expect perfection in motions that come before it, but it expects more than an invitation for the court to do a litigant's work for it. The court's holding on these motions is simply that a party seeking affirmative relief must do a much better job than Defendants did in preparing these motions. The court therefore denies Defendants' motions.

The court will permit Defendants to make a new motion or motions addressing their purported qualified immunity defenses. If they choose to do so, they must follow these instructions. First, they must bring separate motions addressing qualified immunity from Mr. Moore's § 1983 claims and state law qualified immunity. Second, for each claim from which each Defendant seeks qualified immunity, Defendants must state the nature of the claim the Defendant faces, and provide authority that explains why the individual Defendant is entitled to immunity from that particular claim. Lengthy generalized expositions of qualified immunity law are of little assistance to the court, and the court cautions counsel to avoid them.

## IV.  CONCLUSION

For the foregoing reasons, the court DENIES Defendants' motions for summary judgment (Dkt. ## 36, 45).

Dated this 22nd day of November, 2005.

JAMES L. ROBART
United States District Judge

ORDER – 6