1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10
11

KERRY MOORE and KELLIE MOORE,

Plaintiffs,

12

v.

CASE NO. C05-442JLR

13

ORDER

KING COUNTY FIRE PROTECTION
DISTRICT NO. 26, et al.,

14
15
16

Defendants.

17

## I. INTRODUCTION

18
19    This matter comes before the court on various motions for summary judgment by

20 King County Fire Protection District No. 26 (the "District") and the individual

21 Defendants[1] (Dkt. ## 97, 98, 99, 100, 138), a motion to exclude rebuttal expert Ms.

22 Johnson (Dkt. # 135),[2] and a motion for summary judgment on affirmative defenses (Dkt.

23 # 143) by Plaintiffs Kerry and Kellie Moore ("the Moores").  For the reasons stated

24

25          [1] The individual Defendants are Chief James Polhamus, Assistant Chief David Lawrence,
26 and Commissioners Jerry Harris and Gary Bollinger (collectively, the "individual Defendants").

27          [2] The court intends no disrespect to Ms. Johnson by not stating her first name.  The
28 parties cannot agree on whether Ms. Johnson's first name is "Cloie" or "Chloe," and the court
declines to hazard a guess.

ORDER – 1

below, the court GRANTS in part and DENIES in part Defendants' motions for summary

judgment (Dkt. ## 97, 98, 99, 100, 138).  The court DENIES Plaintiffs' motion to

exclude rebuttal expert Ms. Johnson (Dkt. # 135), and GRANTS in part and DENIES in

part Plaintiffs' motion for summary judgment on affirmative defenses (Dkt. # 143).  In

addition, the court orders the parties to resume mediation as set forth in this order.

## II.  BACKGROUND

Mr. Moore worked as a District firefighter until his discharge in April 2004.

Moore Decl. ¶¶ 14-15.[3]  On April 7, 2004, following a pre-disciplinary hearing before

Chief Polhamus, the District's Board of Commissioners voted 2-1 to discharge Mr.

Moore for "dereliction of duty."  The District notified Mr. Moore of his discharge the

following day.  Salazar Decl., Exs. R, S.

### A.  Kidney Condition

In 1997, Mr. Moore was diagnosed with IGA nephritis, a kidney condition that

causes severe kidney pain.  Id., Ex. DD (McLaughlin Letter).  As his condition worsened,

Mr. Moore missed his scheduled shifts with the District.  Polhamus Decl. ¶ 5.  During the

first part of 2003 – from January to August – Mr. Moore missed 35 of the 71 days he was

scheduled to work; he used up all of his sick leave, vacation leave, as well as donated

leave from other firefighters.  Id.  Mr. Moore requested, and was granted, a six-month

leave of absence beginning August 1, 2003.  Id. ¶ 6.  He was scheduled to return to work

following his six-month leave on February 1, 2004.  Id. ¶ 8.  During his absence, Mr.

Moore sought treatment for his pain, and eventually was directed to a possible remedy:

the implantation of a nerve stimulator in his hip that would be attached to his spine.

---

[3] This declaration (Dkt. # 66) accompanied a previous filing by Mr. Moore.

ORDER – 2

Salazar Decl., Ex. EE (Nelson Letter).  Mr. Moore had surgery to implant the stimulator on December 28, 2003.  Id., Ex. CC (Moore Letter); Ex. DD (McLaughlin Letter).

**B.    Request for Additional Leave**

Near the end of his six-month leave, Mr. Moore requested an additional six-week leave of absence and provided a letter from his doctor, but the District denied his request. Polhamus Decl. ¶ 9.  The District asserts that it denied Mr. Moore's request for additional leave because the applicable collective bargaining agreement provided for only a six-month leave of absence.  Id.  Chief Polhamus informed Mr. Moore that if he did not report for work on February 1, 2004, his employment with the District would be terminated.  Id.  Mr. Moore then submitted a new letter from his doctor, indicating that he was able to work without restriction.  Id. ¶ 10.  Chief Polhamus questioned the second letter, which apparently conflicted with the first, and requested a review by Dr. Karton, the District's physician.  Id.  Dr. Karton cleared Mr. Moore to return to work without restriction, and he returned to work on February 2, 2004.  Id. ¶ 11.

**C.    Return, Retraining, and Injury**

Upon his return, Mr. Moore was instructed to work with Battalion Chief Vic Pennington, the District's training chief, to ensure he was physically fit for duty.  Moore Decl. ¶ 7(g).  According to Chief Polhamus, Mr. Moore's retraining was required because Mr. Moore had missed standard firefighter training due to his medical leave.  Polhamus Decl. ¶ 12.  Chief Pennington was ostensibly in charge of Mr. Moore's retraining, and chose "standard drills" for Mr. Moore.  Id. ¶ 13.

Among the tests given to Mr. Moore was the "physical ability" (or "physical agility") test, which is not ordinarily given to experienced firefighters.  Salazar Decl., Ex. F (Pennington Dep.) at 25:1-29:12.  The District asserts that the test was given to Mr. Moore to ensure he was fit to return to duty.  Id., Ex. A (Polhamus Dep.) at 110:20-

ORDER – 3

111:23.  However, although Chief Pennington was in charge of Mr. Moore's training, the decision to require Mr. Moore to take the physical ability test was made by Commissioner Harris.  Id. at 111:18-20.  Mr. Moore and his union representative believed it was unreasonable to require Mr. Moore to take the physical ability test because the test had not been required of other firefighters returning from leave.  Salazar Decl., Ex. H (Jones Dep.) at 60:20-62:2.  Mr. Moore and his representative also objected to the "reasonable performance level" requirement, because the requirement was purely subjective; no definition existed for a "reasonable performance level."  Id.  Nevertheless, Mr. Moore took the test "under protest" on February 3, 2004, his first day back.  Moore Decl. ¶ 7(g).  According to both Chief Pennington and Chief Polhamus, Mr. Moore completed the test in a reasonable time.  Salazar Decl., Ex. A (Polhamus Dep.) at 124:24-125:7; Ex. F (Pennington Dep.) at 68:15-69:10.

Mr. Moore completed additional training requirements under the supervision of Chief Pennington.  Id., Ex. F (Pennington Dep.) at 68:19-69:10.  When Chief Pennington informed Chief Lawrence of Mr. Moore's successful completion of the training requirements in mid-February, however, Chief Lawrence did not believe that Mr. Moore could have completed the requirements in such a short time.  Id. at 92:11-17.  Chief Lawrence instructed Chief Pennington to continue to train Mr. Moore.  Id.

At a loss for additional training requirements, Chief Pennington resorted to individual NFPA task sheets which set forth training requirements for entry-level firefighters at the state's training academies.  Id. at 92:25-94:16.  A past conflict between Mr. Moore and Chief Lawrence[4] led Chief Pennington to question whether the training

---

[4] The court previously discussed the details of the conflict between Mr. Moore and Assistant Chief Lawrence.  See Oct. 31, 2005 order at 1-3 (Dkt. # 86).

ORDER – 4

requirements were retaliatory, or an attempt to "even the score."[5]  Salazar Decl., Ex. F (Pennington Dep.) at 63:2-63:6; 91:12-95:2.  It was also appeared as though Chief Lawrence was still angry with Mr. Moore over the incident.  Id.  Chief Pennington questioned whether Chief Lawrence actually wanted Mr. Moore to succeed in his retraining.  Id. at 94:25-95:2.

On February 24, 2004, Mr. Moore injured his back during the additional training ordered by Chief Lawrence.  Salazar Decl., Ex. PP (Accident Report), Ex. QQ (Statement of Kerry Moore).  Mr. Moore twisted his body to regain control of a loose hose, causing the leads of the stimulator implanted in his back to come loose.  Id.  The event itself was painful, and resulted in an immediate return of Mr. Moore's kidney pain.  Id.  Mr. Moore continued to work the rest of the week, but did not report for work on Monday and Tuesday of the following week.  Id., Ex. RR (McLaughlin Notes Mar. 2, 2004).[6]

---

[5] The exchange regarding the connection between Mr. Moore's training requirements and his prior conflict with Chief Lawrence went as follows:

> Q:   But did it occur to you that they might be connected?
> A:   It occurred to me that, you know, this may be an opportunity for them to, you know –
> Q:   Even the score?
> A:   Maybe that would probably be a correct analysis.

Salazar Decl., Ex. F (Pennington Dep.) at 63:2-63:6.

[6] On March 3, 2004, Lieutenant Kevin Body documented the extensive drills that Mr. Moore had been performing throughout the month of February 2004, noting that:

> At this point, I can see no need for further remedial training or drill.  Kerry has demonstrated proficiency in all skill areas with the physical ability necessary and has met the requirements set forth by the District.

Salazar Decl., Ex. K (Body Letter).  Chief Pennington reported to the Commissioners that Mr. Moore had "successfully completed his evaluation . . ."  Id., Ex. L (Pennington Letter).

ORDER – 5

Mr. Moore returned to work on March 3 and 4, and informed the District he would have exploratory surgery on March 5.  Id., Ex. A (Polhamus Dep.) at 162:22-163:4. During the surgery, Mr. Moore's doctor determined that an additional surgery was necessary.  Mr. Moore met with Chief Polhamus on March 15, 2004, advising him of the need for a second surgery and of his inability to work from March 5, 2004 through May 14, 2004.  Id., Ex. A (Polhamus Dep.) at 177:7-25.

**D.     Termination of Mr. Moore**

On March 22, 2004, Chief Polhamus prepared a memorandum to the District Commissioners regarding Mr. Moore.  Salazar Decl., Ex. O (Polhamus Memo).  The memo prepared by Chief Polhamus advised the Board of Commissioners (the "Commissioners") that Mr. Moore was "not reporting for duty due to a serious medical condition."  Id. at 1.  The memo noted Mr. Moore's ongoing missed time as a result of his kidney problems, and certain "suspicious" discrepancies in his claims.[7]  In addition, the memo contained Internet research performed by Chief Polhamus which noted strict mobility and lifting limitations for patients with Medtronics® brand spinal cord stimulators.   At the time he prepared the memo, Chief Polhamus did not know whether Mr. Moore had a Medtronics® brand spinal cord stimulator implanted in his back. Salazar Decl., Ex. A (Polhamus Dep.) at 51:9-23.

On March 25, 2004, Chief Polhamus met with the Commissioners to discuss Mr. Moore's status.  Salazar Decl., Ex. A (Polhamus Dep.) at 184:13-185:6.  The Chief and the Commissioners were concerned that Mr. Moore had stopped showing up for work. On March 26, Chief Polhamus sent Mr. Moore a letter stating that he was being charged

---

[7] One "suspicious" circumstance noted in the memo was the nearly simultaneous submission of an Labor and Industries ("L&I") claim signed by Mr. Moore and his doctor, which was signed on the same day the doctor gave Mr. Moore a signed "return to duty without restriction" slip.  Salazar Decl., Ex. O (Polhamus Memo) at 3.

ORDER – 6

with "dereliction of duty," and scheduling a pre-disciplinary hearing for April 7, 2004. Id., Ex. Q (Pre-Disciplinary Letter).

On April 7, 2004, Chief Polhamus conducted the pre-disciplinary hearing for Mr. Moore on the charge of dereliction of duty.  Salazar Decl., Ex. P (Pre-Disciplinary Hearing Memo).  Mr. Moore and his union representative were present, and were permitted to review the District's documentation pertaining to Mr. Moore.  Id.  Mr. Moore was permitted to ask questions and to present his side of the story.  Id.  In particular, Mr. Moore told Chief Polhamus that his L&I claim (see supra n.7) had not, in fact, received a final denial.  Id.

Following the pre-disciplinary hearing, Chief Polhamus prepared a memorandum to the Commissioners recommending that Mr. Moore be terminated for cause for dereliction of duty.  Id., Ex. P (Disciplinary Action Memo).  Chief Polhamus made this recommendation based on Mr. Moore's failure to report for duty without leave for twenty-one consecutive work shifts.  That evening at the regular Board of Commissioners meeting, the Commissioners met in executive session to discuss the termination of Mr. Moore.  Id., Ex. A (Polhamus Dep.) at 201:3-12.  The Commissioners returned from the executive session to the open public meeting, at which Commissioners Harris and Bollinger voted to terminate Mr. Moore.  Id., Ex. D (Harris Dep.) at 74:13-14; Ex. E (Bollinger Dep.) at 48:2-22.  Mr. Moore was not present at the public meeting.  The District notified Mr. Moore of his termination the following day, April 8, 2004.  Moore Decl., Ex. S.

## III.  ANALYSIS

In examining these motions for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary

ORDER – 7

judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party must present significant and probative evidence to support its claim or defense. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). For purely legal questions, summary judgment is appropriate without deference to the non-moving party.

**A.     Claims Under 42 U.S.C. § 1983**

The individual defendants – Chief Polhamus, Chief Lawrence, Commissioner Harris, and Commissioner Bollinger – raise a qualified immunity defense to each of Mr. Moore's claims under 42 U.S.C. § 1983 ("§ 1983"). The District and the individual Defendants also have moved for summary judgment on each of Mr. Moore's § 1983 claims.

Section 1983 creates a remedy for an individual who suffers a violation of rights under the Constitution or other laws at the hands of a person acting under the color of state law. 42 U.S.C. § 1983. Qualified immunity provides a defense in a § 1983 action where a reasonable person in the defendant's shoes could have mistakenly believed that the law did not prohibit his conduct. Saucier v. Katz, 533 U.S. 194, 205 (2001). The qualified immunity doctrine focuses on reasonable legal mistakes, not factual mistakes. Id. In some contexts, a reasonable mistake as to underlying facts will insulate a defendant from liability, but this is a separate inquiry from qualified immunity. Id.

ORDER – 8

(noting that reasonable, but mistaken, factual judgments can justify the use of force under the Fourth Amendment).

Since the Supreme Court decided Saucier, the Ninth Circuit has refined the two-step inquiry for addressing qualified immunity.  A court must first determine if the evidence taken in the light most favorable to the plaintiff shows that a constitutional violation occurred.  Kennedy v. City of Ridgefield, 439 F.3d 1055, 1060-61 (9th Cir. 2006).  If a violation occurred, then the court must turn to the second step, which focuses on whether the law underlying the constitutional violation was "clearly established." Id. In this step, the court decides if the officer made a reasonable mistake about what the law requires.  Id. at 1061.  The court now applies this two-step analysis to each of the three violations of the Due Process Clause that Mr. Moore alleges.[8]

> **1.** **The Individual Defendants Are Entitled to Qualified Immunity on Plaintiffs' Procedural Due Process Claim for Deprivation of Mr. Moore's Property Interest.**

A public employee holds a property interest in his or her job when some legal right prevents the employee from being terminated from his or her job without a showing of good cause.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-39 (1985).  The parties do not dispute that Mr. Moore had a property interest in his position as a firefighter with the District which entitled him to due process protection.

The first step of the court's inquiry is an evaluation of the evidence supporting the alleged constitutional violation taken in the light most favorable to Mr. Moore.  Kennedy, 439 F.3d at 1060-61.  The parties first disagreement centers on whether the

---

[8] Mr. Moore originally brought a fourth claim under § 1983.  Mr. Moore now concedes, however, that the legal basis for his claim of a substantive due process violation for arbitrarily and capriciously terminating his employment was not clearly established at the time of his termination; he is no longer pursuing this claim against the individual defendants or the District. See Pls.' Opp. at 25 n.7; see also Notice of Withdrawal (Dkt. # 160).

ORDER – 9

pre-disciplinary hearing was "meaningful" and sufficient to protect Mr. Moore's right to due process. A pre-disciplinary hearing is not "meaningful" if the decisionmaker has made up his or her mind regarding the termination in advance, or if the employee is not afforded the opportunity to be heard at a meaningful time and in a meaningful manner. Brady v. Gebbie, 859 F.2d 1543, 1554-55 (9th Cir. 1988); Mathews v. Eldridge, 424 U.S. 319, 333 (1976). At a minimum, due process requires notice and a hearing, affording the individual a meaningful opportunity to confront the evidence against him. Vanelli v. Reynolds Sch. Dist. No. 7, 667 F.2d 773, 780 (9th Cir. 1982). Although necessary, the pre-disciplinary hearing need not be elaborate. Loudermill, 470 U.S. at 545; see also Clements v. Airport Auth., 69 F.3d 321, 332 (9th Cir. 1995). The failure to provide an impartial decisionmaker at the pre-disciplinary hearing does not create liability if an impartial decisionmaker is provided at the post-termination hearing. Walker v. Berkeley, 951 F.2d 182, 183-84 (9th Cir. 1991) (citing Duchesne v. Williams, 849 F.2d 1004 (6th Cir. 1988) (no due process violation where allegedly biased city manager held pre-disciplinary hearing for chief building inspector, but state law provided for a full post-termination hearing)).

On March 26, prior to Mr. Moore's pre-disciplinary hearing, Chief Polhamus sent him a letter stating that the District was charging him with "dereliction of duty" for having "abandoned" his job without leave. Salazar Decl., Ex. Q (Pre-Disciplinary Letter). The pre-disciplinary hearing was conducted on April 7, 2004, with Mr. Moore and his union representative present. Id., Ex. P (Pre-Disciplinary Hearing Memo). Mr. Moore and his union representative were permitted to review the documentation relating to the disciplinary action, ask questions, and present Mr. Moore's side of the story. Id. Plaintiffs contend that Chief Polhamus was biased against Mr. Moore, having already made up his mind regarding the termination. Mr. Moore contends that the Chief rejected

ORDER – 10

his arguments for keeping his job, rejected his requests for "light duty," and told him that there was nothing he could do to keep his job. Moore Decl. ¶ 12.

Taking the evidence in the light most favorable to Mr. Moore, the court finds that the pre-disciplinary hearing was sufficient to satisfy the limited requirements of Loudermill. Mr. Moore complains that Chief Polhamus had recommended his discharge to the Commissioners prior to the hearing, that he was unaware of Chief Polhamus's communications with the Commissioners, and that Chief Polhamus had researched spinal stimulators on the Internet. Moore Decl., Ex. Q (Polhamus Memo); see also Polhamus Decl. ¶ 19.[9] The communication between Chief Polhamus and the Commissioners does not establish, however, that the pre-disciplinary hearing violated Mr. Moore's due process rights. A recommendation for disciplinary action is a necessary step in the disciplinary process, almost a condition precedent to a pre-disciplinary hearing. The fact that Chief Polhamus first recommended discipline before holding the pre-disciplinary hearing is unremarkable; similarly, his belief that the charges supported discipline does not establish that he was unwilling to listen to Mr. Moore at the hearing. Chief Polhamus's testimony contains no indication that his mind was made up prior to the hearing, and his report to the Commissioners contains no evidence of such a predisposition. See Polhamus Decl. ¶ 22. Rather, the memo sent to the Commissioners indicates that Chief Polhamus considered Mr. Moore's questions and followed up on them after the hearing. See Salazar Decl., Ex. P (Pre-Disciplinary Hearing Memo).

Mr. Moore also argues that Chief Polhamus did not adequately consider his requests for light duty or allow him to do anything to keep his job. See Pls.' Opp. at 28.

---

[9] Plaintiff agreed with the court that the memo to the Commissioners does not recommendation the termination of Mr. Moore's employment. Nevertheless, Chief Polhamus concedes in his declaration that it was a recommendation for termination. Polhamus Decl. ¶ 19.

ORDER – 11

There is no due process requirement, however, that the decisionmaker afford the employee new chances to keep his job, or find that his arguments for continued employment are well-taken. While such actions may implicate other claims (e.g., discrimination), the purpose of the pre-disciplinary hearing is to afford the employee a meaningful opportunity to be heard prior to termination. Mr. Moore presents no facts or evidence, beyond the allegations of Chief Polhamus's bias, which support his contention that the hearing was not meaningful.

Even assuming Chief Polhamus was not impartial, or believed the charges supported termination, the court finds no due process violation. The pre-disciplinary hearing was sufficient to meet the minimal requirements of <u>Loudermill</u>. Mr. Moore was provided with advance notice of the hearing, was permitted to present his side of the story at a meaningful place and time, and was permitted a chance to question the District's evidence. The court concludes that the District advised Mr. Moore of the charges against him, and that Mr. Moore addressed those charges at the hearing. The failure to provide an impartial decisionmaker at a pre-disciplinary hearing does not create liability where an impartial decisionmaker is provided at a post-termination hearing. <u>Walker</u>, 951 F.2d at 183-84.

The court must separately assess post-termination proceedings. <u>Clements</u>, 69 F.3d at 332 ("In the context of process due a terminated public employee, a full post-deprivation hearing does not substitute for the required pre-termination hearing."). The parties disagree over what post-termination proceedings were available to Mr. Moore. Defendants contend that two proceedings were available: the public hearing on April 7, 2004, where the Commissioners voted to terminate Mr. Moore, and the grievance procedures provided in Mr. Moore's collective bargaining agreement ("CBA"). Mr. Moore did not utilize either forum.

ORDER – 12

The court need not decide whether the public hearing would have provided sufficient post-termination proceedings. Mr. Moore's CBA provided for a six-step grievance procedure, which included neutral arbitration. Mr. Moore's choice to ignore post-termination neutral arbitration forecloses his claim of procedural due process violation. Mr. Moore does not dispute that the neutral arbitration procedures available would have met the requirements of due process. He argues, however, that he was unaware of his right to utilize the CBA grievance procedures because of bad information received from the union. Such a claim does not implicate a due process violation by the District, however, and Mr. Moore has not brought a claim against the union. Mr. Moore also argues that he would have been required to bring his claim before biased supervisors, which would have impermissibly burdened his right to due process. The court concludes that such a requirement would have imposed a negligible burden on Mr. Moore's due process rights. In any event, Mr. Moore's failure to use the post-termination procedures available to him forecloses his claim that those procedures violated his right to due process.

The court concludes as a matter of law that there was no violation of Mr. Moore's right to procedural due process as it relates to his property interest.[10] Accordingly, the court does not reach the second step of Saucier and evaluate whether the constitutional violation was clearly established. The court dismisses these claims against all parties.

---

[10] The court further notes that even if the CBA grievance procedures were constitutionally deficient, the court would find that a constitutional violation was not "clearly established" at the time of Mr. Moore's termination. The pre-disciplinary and post-termination proceedings provided for Mr. Moore complied substantially with the procedural due process guarantees of the Fourteenth Amendment.

ORDER – 13

**2.    The Individual Defendants Are Entitled to Qualified Immunity on Plaintiffs' Procedural Due Process Claim for Deprivation of Mr. Moore's Liberty Interest.**

The Fourteenth Amendment also provides protections against the deprivation of a liberty interest without procedural due process.  Brady, 859 F.2d at 1547.  When an employee is terminated, a liberty interest is implicated where the charges impair the employee's reputation for honesty or morality, Brady, 859 F.2d at 1552, or where the allegations seriously damage a person's standing in the community or permanently exclude a person from his or her chosen occupation.  Merritt v. Mackey, 827 F.2d 1368, 1373 (9th Cir. 1987).  In order to trigger the procedural protections of due process attendant to a properly presented liberty interest claim, a plaintiff must show that (1) the accuracy of the charge is contested; (2) there is some public disclosure of the charge; and (3) the charge is made in connection with termination of employment.  Brady, 859 F.2d at 1552.

Pursuant to the terms of his CBA, a copy of Mr. Moore's letter of discharge was placed in his personnel file.  The letter of discharge specifically referenced Mr. Moore's discharge for "dereliction of duty."  Moore Decl., Ex. S.  Considering the facts before the court in the light most favorable to Mr. Moore, the court concludes that due process protections are implicated.  See generally Cox v. Roskelley, 359 F.3d 1105, 1112 (9th Cir. 2004) (holding that stigmatizing information in a personnel file subject to public disclosure is sufficient to implicate employee's liberty interest).  The court therefore proceeds with the two-step inquiry for addressing qualified immunity.

The first step in the court's analysis is to determine if the evidence – taken in the light most favorable to Mr. Moore – shows that a constitutional violation occurred.  Kennedy, 439 F.3d at 1060-61.  Where an employee's liberty interest is triggered in connection with employment termination, the employee must be provided with a

ORDER – 14

meaningful "name clearing" hearing.  Mr. Moore was provided with such a hearing.  As discussed above, the District provided Mr. Moore with a pre-disciplinary hearing in which he was presented with the "dereliction of duty" charges against him.  He was permitted to review the District's documentation, ask questions, and to present his side of the story.  He was permitted to contest the charges against him.  The court concludes that the pre-disciplinary hearing provided Mr. Moore with an adequate forum to "clear his name," in advance of termination, by presenting him with the charges and providing him with a meaningful time and place to address those charges.

After the pre-disciplinary hearing, Mr. Moore failed to take advantage of the available post-termination proceedings.  He did not attend the public hearing on April 7, 2004, where the Commissioners voted to terminate him.  He similarly did not utilize the grievance procedures in his CBA that provided for neutral arbitration.  Mr. Moore's choice to forego his available post-termination proceedings forecloses his procedural due process claims.

The court concludes as a matter of law that there was no violation of Mr. Moore's right to procedural due process as it relates to his liberty interest.  Accordingly, these claims are dismissed against all parties.[11]

_____

[11] Plaintiffs also contend that Chief Polhamus and the District violated Mr. Moore's procedural due process rights by the Chief's statements to the Department of Employment Security regarding Mr. Moore's alleged "fraudulent" conduct.  This contention, however, lacks legal or evidentiary support.  Plaintiffs have not provided any evidence that Chief Polhamus's statements caused Mr. Moore to be unable to pursue the job of his choice.  In addition, Plaintiffs fail to even discuss whether statements to the Department of Employment Security fit within the limits of due process protection.  The court therefore concludes as a matter of law that Chief Polhamus's statements to the Department of Employment Security did not violate Mr. Moore's right to procedural due process.

ORDER – 15

1

2

### 3.   The Individual Defendants Are Entitled to Qualified Immunity on Plaintiffs' Substantive Due Process Claim for Deprivation of Mr. Moore's Liberty Interest.

3

4

5

Individuals have a substantive due process right to engage in the occupation of their choice.  In order to state a substantive due process claim for deprivation of a liberty

6

7

interest, an individual must first establish that he or she is unable to pursue the job of his or her choice, and that this inability is due to actions that were "clearly arbitrary and

8

9

unreasonable, having no substantial relation to the public health, safety, morals, or general welfare."  Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 474 (9th Cir.

10

11

1991).  Plaintiffs urge that Mr. Moore is unable to pursue a career as a firefighter with a different fire district because the taint of the "dereliction of duty" charge is inescapable.

12

13

Pls.' Opp. at 36-37 (citing Skilling Decl.).  Although the District presently employs Mr. Moore as a firefighter,[12] for the purposes of this motion the court assumes that Plaintiffs'

14

15

16

vocational rehabilitation expert correctly states that Mr. Moore will not find work as a firefighter.

17

To establish a substantive due process violation Mr. Moore must also establish that

18

19

his inability to pursue his chosen profession results from actions that were "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety,

20

morals, or general welfare."  Henderson, 940 F.2d at 474.  Plaintiffs argue that the

21

22

decision to terminate Mr. Moore for "dereliction of duty" was "clearly arbitrary and unreasonable" because he was temporarily disabled and unable to report for duty, and

23

24

because his conduct demonstrated that he wanted to keep his job.  See Pls.' Opp. at 35-

25

36.  The parties' discussion of "clearly arbitrary and unreasonable" comes mostly from

26

27

28

<hr>

[12] The District sent Mr. Moore an "unconditional offer of reinstatement to his position as Firefighter First Class" on November 8, 2005.  Salazar Decl., Ex. M.  Mr. Moore accepted the District's offer on December 29, 2005.  Id., Ex. N.

ORDER – 16

outside the Ninth Circuit.  See, e.g., Pearson v. City of Grand Blanc, 961 F.2d 1211, 1221 (6th Cir. 1992) ("willful and unreasoning action, without consideration and in disregard of the facts and circumstances of the case"); Coniston Corp v. Vill. of Hoffman Estates, 844 F.2d 461, 467 (7th Cir. 1988) ("invidious or irrational"); Schuler v. Univ. of Minnesota, 788 F.2d 510, 515 (8th Cir. 1986) ("motivated by bad faith or ill will"); Henderson, 940 F.2d at 474 ("having no substantial relation to the public health, safety, morals, or general welfare").

These cases make clear, however, that a substantive due process violation will not follow every "incorrect" or "ill-advised" personnel decision.  See Collins v. City of Harker Heights, 503 U.S. 115, 129 (1992).  The Due Process Clause was intended to prevent government officials "from abusing [their] power, or employing it as an instrument of oppression," and only the most egregious official conduct can be said to be "arbitrary in the constitutional sense."  County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (internal quotations omitted).

Mr. Moore presents the court with no evidence of conduct that was willful and unreasoning, irrational and invidious, or motivated by bad faith or ill will.  Rather, Plaintiffs simply point to the termination of Mr. Moore and presume the facts must necessarily support a substantive due process claim.  That is not the case.  Taking every inference in favor of Mr. Moore, the court finds no evidence to support his claim that a substantive due process violation occurred.  Accordingly, these claims are dismissed against all parties.

**B.      Qualified Immunity – State Law Claims**

Defendants previously filed motions for summary judgment on state law qualified immunity grounds (Dkt. ## 36, 45), which the court rejected.  The court provided instructions if Defendants wished to again raise qualified immunity.  With regard to

ORDER – 17

1    Plaintiff Moore's state law claims, Defendants ignored the court's instructions.[13]  The

2    court again rejects Defendants' request to extend state law qualified immunity to a

3    plethora of unspecified claims.  Defendants concede that the analysis they propose has

4    never been adopted in these circumstances by any Washington court.  See

5    Commissioners' Mot. at 15-16.

6
          This court may not, of its own accord, broadly extend the protections of state law

7    qualified immunity.  Accordingly, the court finds the individual Defendants do not have

8    qualified immunity from suit on Mr. Moore's state law claims.

9

10   **C.    State Law Claims**

11       **1.    Wrongful Termination in Violation of Public Policy**

12       Plaintiffs are no longer pursuing this claim and it is therefore dismissed against all

13   parties.  See Pls.' Opp. at 41 n.11.

14       **2.    Defamation**

15       Mr. Moore's defamation claim arises from a telephone call between Chief

16   Polhamus and an Employment Security Department representative, and from the letter of

17   discharge that was placed in Mr. Moore's personnel file upon his termination.  Plaintiff

18   asserts his defamation claim against Chief Polhamus and the District.

19
          During an interview conducted by the Employment Security Department on June

20   1, 2004, Chief Polhamus made various statements regarding Mr. Moore's conduct.  Notes

21   from the interview reflect statements by Chief Polhamus that Mr. Moore's conduct had

22   been "fraudulent" and that "misconduct [had] been established."  See Salazar Decl., Ex.

23   WW (Interview Notes); Ex. A (Polhamus Dep.) at 219:12-224:20.

24

25

26
_____

27       [13] The court instructed that "for each claim from which each Defendant seeks qualified
     immunity, Defendants must state the nature of the claim the Defendant faces, and provide
28   authority that explains why the individual Defendant is entitled to immunity from that particular
     claim."  Nov. 22, 2005 order at 6 (Dkt. # 95).

ORDER – 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants claim that Chief Polhamus's statements were subject to statutory immunity pursuant to RCW § 4.24.510, which provides, in part, as follows:

> A person who communicates . . . information to any branch or agency of federal, state, or local government . . . that has been delegated authority by a federal, state, or local government agency and is subject to oversight by the delegating agency, is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization.

Defendants claim that Chief Polhamus's communications with the Department of Employment Security fall squarely within these limits of immunity from civil liability. Plaintiffs contend that such immunity does not apply because the District is a governmental entity and Chief Polhamus is a public official.

The court rejects Plaintiffs' argument and their misplaced reliance on Skimming v. Boxer, 82 P.3d 707 (Wash. Ct. App. 2004). Plaintiffs fail, perhaps inadvertently, to mention the most important fact in Skimming: the communication at issue by the Spokane County executive was *to a newspaper.* Id. at 712-13. The newspaper was not a branch of government as required by the statute. The opinion in Gontmakher v. Bellevue, 85 P.3d 926 (Wash. Ct. App. 2004), directly addresses the issue now before the court. In that case, a city employee contacted the Washington State Department of Natural Resources regarding clear-cutting of land in Bellevue. The Court of Appeals concluded that RCW § 4.24.510 included governmental entities in the definition of "person," and that the City of Bellevue was immune from suit for its employee's communications with the Department of Natural Resources. Id. at 930-31.

Chief Polhamus and the District are immune from suit for the Chief's communications with the Washington State Department of Employment Security. The communications are the concern of that agency and are clearly covered by statutory

ORDER – 19

immunity.  As such, Plaintiff's defamation claim for communications with the

Department of Employment Security is dismissed.[14]

### 3.   Retaliation

Mr. Moore asserts a retaliation claim and an aiding and abetting retaliation claim

against Mr. Lawrence and Commissioner Harris under RCW § 49.60.210.  The court has

previously limited this claim to the discrete acts[15] (i.e. adverse employment actions) by

Mr. Lawrence which occurred in 2004.  See Oct. 31, 2005 order at 9-10 (Dkt. # 86).  The

court declined to reach "the District's contention that *only* Mr. Lawrence is a proper

Defendant in Plaintiffs' retaliation claim" because it was raised for the first time in reply.

Id. at 15 (emphasis added).  The court's order did not foreclose a retaliation claim against

Commissioner Harris.  For the reasons stated in the order, however, the court finds that

discrete acts by Commissioner Harris in 2004 that constitute adverse employment actions

are also actionable under Plaintiff's retaliation claim and/or aiding and abetting retaliation

claim.

Commissioner Harris now moves for summary judgment dismissing Mr. Moore's

retaliation claims against him.[16]  Although it is undisputed that Mr. Moore engaged in

protected activity and was terminated eight years later, Commissioner Harris contends

---

[14] Although Defendants have ostensibly moved for summary judgment on Mr. Moore's
entire claim for defamation, they have made no mention of that part of the claim which is based
on the placement of the letter of discharge in Mr. Moore's personnel file.  At oral argument,
Defendants were unable to direct the court to any arguments in their briefing related to this part
of the claim.  As such, the court must deny in part the motion for summary judgment as it relates
to Mr. Moore's claim for defamation based on the placement of the letter of discharge in his
personnel file.

[15] "[O]nly [Mr. Moore's] retaliation claim based on Mr. Lawrence's 2004 conduct is
actionable."  Oct. 31, 2005 order at 10 (Dkt. # 86).

[16] Mr. Moore is not asserting a retaliation claim against Commissioner Bollinger or
against Chief Polhamus.  See Pls.' Opp. at 48.

ORDER – 20

that no evidence supports a causal link between the protected activity and the adverse

action.  An adverse employment action long after a protected activity is less likely to

reflect an improper motive, and a retaliation claim is properly dismissed when there is

nothing to suggest a nexus between the complaint and the adverse employment action.

Wilmot v. Kaiser Aluminum & Chem. Corp., 821 P.2d 18 (Wash. 1991).  "Evidence of

an actual pattern of retaliatory conduct is, of course, very persuasive."  Id. at 29.

Moreover, the plaintiff may rely on circumstantial evidence, "since the employer is not

apt to announce retaliation as his motive."  Id.

          Based on the evidence before the court, it is possible that a reasonable jury could

find that Commissioner Harris had a retaliatory motive related to the Goodman incident.[17]

Commissioner Harris has testified that he believes Mr. Moore "set up" his friend, Chief

Lawrence.  Salazar Decl., Ex. D (Harris Dep.) at 39:25-43:19.[18]  A reasonable jury could

find that Commissioner Harris and Chief Lawrence were close friends, and that

Commissioner Harris's involvement in the retraining decisions for Mr. Moore, the driving

restrictions placed on Mr. Moore, and the termination decision for Mr. Moore were

based, in part, on his belief that Mr. Moore "set up" Chief Lawrence.  As a matter of law,

these actions by Commissioner Harris constitute adverse employment actions.  A

reasonable jury could find for Plaintiff on the claim of retaliation.  Defendant's motion

for summary judgment on Mr. Moore's state law retaliation claim is therefore denied.

---

[17] In 1996, Mr. Moore was present when Assistant Chief Lawrence made an inappropriate sexual comment and gesture to Officer Goodman, a female police officer with the Des Moines Police Department (the "Goodman incident").  Moore Decl. ¶ 3.  Mr. Moore provided a witness statement to District personnel investigating the incident, and Chief Lawrence was disciplined.  Id. ¶ 4.

[18] Although the long period of time between protected activity and retaliation belies the claim of nexus, the Commissioner's testimony that Mr. Moore engaged in protected activity in bad faith could support a finding by the jury that such a nexus was present.

ORDER – 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 4.    Discriminatory Discharge on the Basis of a Disability

Mr. Moore asserts a claim for discriminatory discharge on the basis of disability (i.e., disparate treatment) against the District, Chief Polhamus, and Commissioners Harris and Bollinger under RCW § 49.60.180.  Washington courts have largely adopted the federal evidentiary burden-shifting protocol for evaluating motions for judgment as a matter of law in discrimination cases where the plaintiff lacks direct evidence of discriminatory animus.  E.g., Hill v. BCTI Income Fund-I, 23 P.3d 440, 446 (Wash. 2001) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).

A plaintiff first bears the burden of setting forth a prima facie case of unlawful discrimination, demonstrating (1) disability; (2) discharge; (3) satisfactory work performance; and (4) replacement by a non-disabled worker.  Becker v. Cashman, 114 P.3d 1210, 1214 (Wash. Ct. App. 2005).  Taking every inference in Mr. Moore's favor, as the court must for purposes of these motions, the court finds that Mr. Moore has successfully set forth a prima facie case of unlawful discrimination.  The only real dispute is whether Mr. Moore satisfactorily performed his job.  A reasonable jury might find that in spite of his absenteeism, Mr. Moore was a competent firefighter.  Defendants have not provided evidence to the contrary.

Once the employee has set forth a prima facie case of unlawful discrimination, the burden of production shifts to the employer to provide a nondiscriminatory reason for the employee's discharge.  Id.  If the employer meets this burden, the presumption of unlawful discrimination is rebutted and the burden shifts back to the employee to show that the employer's stated reason for the discharge was in fact pretext.  Id.

Defendants argue that the legitimate nondiscriminatory reason for Mr. Moore's discharge was his absenteeism.  See Salazar Decl., Ex. WW at 2.  A reasonable jury might find evidence to support this nondiscriminatory reason for discharge given Mr.

ORDER – 22

Moore's undisputed record of absenteeism.  For the purpose of this analysis, the court

concludes that Defendants have met their burden of production.  As such, the burden

shifts back to Mr. Moore to show that the employer's stated reason for the discharge was

merely pretextual.

On the facts before the court, a reasonable jury might conclude that the

absenteeism charge was mere pretext for discharging Mr. Moore because of his disability.

Defendants contend that Mr. Moore has not met his burden to "cite facts, not just

conclusions that support his claim" of pretext.  See Cluff v. CMX Corp., 929 P.2d 1136,

1139 (Wash. Ct. App. 1997).  The court finds that sufficient facts support Mr. Moore's

contentions.  A reasonable jury might conclude that Chief Polhamus and the

Commissioners considered Mr. Moore's medical condition as part of his termination, and

terminated him because they thought his disability made it unlikely that he would return

to work.  See Salazar Decl., Ex. D (Harris Dep.) at 62:2-63:3; Ex. E (Bollinger Dep.) at

44:2-5, 47:24-48:22; Ex. O (Polhamus Memo).  A reasonable jury might conclude that

Chief Polhamus's Internet research on spinal stimulators and his subsequent report to the

Commissioners is evidence of pretext.  Id., Ex. O (Polhamus Memo).  Chief Polhamus is

admittedly not a doctor, and his research indicates consideration of Mr. Moore's

disability as it related to his employment and termination.  Defendants' motion for

summary judgment on Mr. Moore's claim for discriminatory discharge on the basis of

disability is therefore denied.  Genuine issues of material fact preclude summary

judgment on this issue.

### 5.    Aiding and Abetting Discrimination

Mr. Moore asserts a claim for aiding and abetting discriminatory discharge against

the District, Chief Polhamus, and Commissioners Harris and Bollinger under RCW

§ 49.60.220.  He also asserts a claim for aiding and abetting retaliation against Mr.

ORDER – 23

Lawrence, which the court discussed above.  Defendants urge the court to dismiss the

aiding and abetting discriminatory discharge claim because it is a derivative claim.

However, because the court has declined to dismiss the discriminatory discharge claim, as

urged by Defendants, the court also declines to dismiss the aiding and abetting

discriminatory discharge claim.  For the reasons stated in the previous section, genuine

issues of material fact prevent summary judgment on this claim.

### 6.    Loss of Consortium

As with the aiding and abetting claims, Defendants urge the court to dismiss the

loss of consortium claim as derivative.  However, because the court has declined to

dismiss the underlying claims, there is no basis for dismissing the loss of consortium

claim.  Defendants' motion for summary judgment on this issue is therefore denied.

## D.    Rebuttal Expert Ms. Johnson

Plaintiffs seek an order excluding Defendants' rebuttal expert, Ms. Johnson,[19] from

providing rebuttal expert testimony because Defendants did not comply with the

November 30, 2005 expert disclosure deadline.  See order (Dkt. # 70) (extending Fed. R.

Civ. P. 26(a)(2) expert disclosure deadline to November 30, 2005).  The scheduling order

sets one date for expert disclosures, but does not include a deadline for rebuttal expert

disclosures.  Plaintiffs recognize that Fed. R. Civ. P. 26(a)(2)(c) permits rebuttal expert

disclosures within 30 days after the disclosure made by the other party, but nevertheless

---

[19] Plaintiffs raise a new argument in reply that Ms. Johnson is not, in fact, a rebuttal expert.  See Pls.' reply at 2 ("Accordingly, Ms. Johnson is *not* a rebuttal expert, and her opinions plainly should have been disclosed on or before November 30, 2005.").  Defendants challenge this argument in Surreply, and the court will not consider it for the purpose of determining whether Ms. Johnson's testimony is appropriate at trial.  Plaintiffs' motion to exclude presumes that Ms. Johnson is a rebuttal witness, and the court will not permit inconsistent argument in reply.  However, Ms. Johnson's expert disclosure is clearly untimely for her testimony as a principal expert; the court will only permit Defendants to use Ms. Johnson as a rebuttal expert.

ORDER – 24

contend that rebuttal expert disclosures are required at the same time as expert disclosures. This makes no sense, and Plaintiffs' position would vitiate the purpose of rebuttal experts. This court agrees with the various published and unpublished decisions cited by Defendants: when the scheduling order does not set a date for the rebuttal expert deadline, the parties may resort to Fed. R. Civ. P. 26(a)(2)(c). The deadline for rebuttal testimony was 30 days after the deadline for expert disclosures: December 30, 2005.

Defendants produced their expert disclosures on January 5, 2006. The parties do not dispute that the disclosures were late. Late disclosures are never appropriate, and where the lateness causes prejudice, the court will consider excluding the untimely material. However, Plaintiffs' motion to exclude alleges no prejudice as a result of the late disclosures and Plaintiffs first raise prejudice in their reply. Pursuant to Fed. R. Civ. P. 37(c)(1), the court denies Plaintiffs' motion to exclude because the late production was harmless.

**E.  Affirmative Defenses**

Plaintiffs ask the court to grant summary judgment on six affirmative defenses asserted by Defendants, which they claim are inapplicable as a matter of law or unsupported by admissible evidence.

**1.      The Washington Industrial Insurance Act**

The Moores ask the court to grant summary judgment on Defendants' fifth affirmative defense that Mr. Moore's claims are barred by the Washington Industrial Insurance Act ("IIA"). The parties agree that the IIA does not bar an action for handicap discrimination where the underlying disability arose in the workplace, and that the IIA does not preclude recovery of separate physical or emotional injuries flowing from the discrimination. Goodman v. Boeing Co., 899 P.2d 1265, 1267 (Wash. 1995). Plaintiffs clearly state in their moving papers that they are *not* seeking damages for medical

ORDER – 25

treatment of Mr. Moore's on-the-job injury, and that they seek only medical expenses related to the treatment and care received for emotional distress caused by Defendants' discriminatory conduct.  See Pls.' Mot. at 3.  Defendants contend, however, that Mr. Moore's emotional distress was caused by his kidney disease, painful childhood incidents, and his experiences as a first responder.

The court agrees with Plaintiffs' that Defendants' fifth affirmative defense is inapplicable on the facts alleged by Mr. Moore.  The parties agree that the nature of Plaintiffs' emotional distress is a question of fact.  The jury will likely be instructed that it is only to award damages for discriminatory conduct.  See Goodman, 899 P.2d at 1267. If the jury finds that Mr. Moore's emotional distress and loss of consortium resulted from Defendants' acts of discrimination, those claims are not subject to bar by the IIA. Accordingly, the court grants Plaintiffs' motion for summary judgment as it relates to Defendants' fifth affirmative defense.

### 2.    Comparative Fault and Fault of Third Parties

Defendants argue that Mr. Moore's damages are the result of his own negligence or fault, or the negligence and fault of third parties.  Am. Answer at 8.  Defendants have alleged that Mr. Moore is "at fault" because he contributed to a poor work atmosphere, failed to timely get medical assistance, and worked at the District while taking pain medication.  See Second Salazar Decl., Ex F (Patterson Letter 11/14/05) at 3, Ex. H (Patterson Letter 11/22/05) at 4.[20]

The court agrees with Plaintiffs that the fault of Mr. Moore or any third party is irrelevant in considering whether the District or its employees discriminated against Mr. Moore or retaliated against him for engaging in protected activity.  Defendants cite no

---

[20] Dkt. # 144.

ORDER – 26

law in support of this proposition, and the court reaches the obvious conclusion that whether or not Mr. Moore contributed to a poor work atmosphere, failed to get medical assistance while a District employee, or worked at the District while taking pain medication is irrelevant to whether the District discriminated against him.  The District's fault-based affirmative defenses are inapplicable to the question of discrimination.

The District also asserts that its fault-based affirmative defenses relate to damages. Specifically, the District alleges that Mr. Moore or third parties may be at fault for his emotional distress, loss of consortium, and defamation claims.  Plaintiffs respond that the District improperly confuses affirmative defenses with sufficiency of Plaintiffs' allegations.  See, e.g., Quintana v. Baca, 233 F.R.D. 562, 565 (C.D. Cal. 2005) (holding that an attack on the sufficiency of plaintiff's allegations is not an affirmative defense). The question of whether of Mr. Moore, or any third party, are responsible for Mr. Moore's damages is necessarily one for the jury, and the jury will decide what portion of Mr. Moore's damages resulted from the Defendants' actions.  Defendants' fault-based affirmative defenses are an attack on the sufficiency of Plaintiff's allegations, and are not properly cognizable as affirmative defenses.  Defendants may argue to the jury that Mr. Moore's damages were caused by something other than their actions, but this is not a proper affirmative defense.  Accordingly, the court grants Plaintiffs' motion for summary judgment on these defenses.

### 3. Intervening or Superseding Cause

Defendants also assert the affirmative defense of intervening or superseding cause, alleging that others may be at fault, including (1) Mr. Moore's union, which failed to grieve his termination; (2) unidentified District employees; and (3) Mr. Moore's doctors. Id., Ex. F (Patterson Letter 11/14/05) at 3.  Defendants contend that Mr. Moore's damages are the result of an intervening or superseding cause.  Am. Answer at 9 (18th

Aff. Def.). Defendants base this allegation on Mr. Moore's doctor-approved return to work and subsequent injury, and medical records indicating past counseling. Second Salazar Decl., Ex F (Patterson Letter 11/14/05) at 4-5. Plaintiffs ask the court to grant summary judgment that this affirmative defense is inapplicable to the Washington Law Against Discrimination ("WLAD"), RCW § 49.60.

Actual damages under the WLAD are a remedy for full compensatory damages, excluding only nominal, exemplary, or punitive damages, that are proximately caused by the wrongful action in violation of the WLAD. Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 160, 87 P.3d 757, 763-64 (Wash. 2004). In this context, proximate cause is a cause which in a natural and continuous sequence, unbroken by a new, independent cause, produces the event, and without which that event would not have occurred. See id. The court finds that Defendants' affirmative defense of intervening or superseding cause, if properly supported by the evidence, is cognizable under Washington law. The court therefore denies Plaintiffs' motion for summary judgment on this defense.

### 4.    Unforeseeability

Plaintiffs argue that the court should grant summary judgment on the Defendants' seventeenth affirmative defense of unforeseeability. Plaintiffs contend that it does not matter whether it was foreseeable that Mr. Moore would have an adverse reaction to discrimination and termination. E.g. Negron v. Snoqualmie Valley Hosp., 963 P.2d 55 (Wash. Ct. App. 1997) (holding that plaintiff is not required to prove that emotional distress was intended or reasonably foreseeable). Defendants have not responded to this argument and the court therefore grants Plaintiffs' motion for summary judgment on this affirmative defense.

ORDER – 28

### 5.     No Right to a Specific Supervisor

Defendants' nineteenth affirmative defense is that an employer is under no obligation to provide a different supervisor more to Plaintiffs' liking as a method of accommodation.  Plaintiffs concede the point, but claim it is irrelevant on the claims asserted by Mr. Moore.  Mr. Moore is not bringing suit because Mr. Lawrence was just an abusive supervisor.  Mr. Moore alleges discrimination and retaliation; he alleges violations of Washington law.  Whether or not Mr. Moore is entitled to a supervisor to his liking is irrelevant, because under the WLAD no supervisor is entitled to be abusive and discriminatory or abusive and retaliatory.  Under Washington law, Mr. Moore was entitled to a supervisor who did not retaliate or discriminate.  The court therefore grants Plaintiffs' motion for summary judgment on this affirmative defense.

## IV.  CONCLUSION

For the reasons stated, the court GRANTS in part and DENIES in part Defendants' motions for summary judgment (Dkt. ## 97, 98, 99, 100, 138).  The court DENIES Plaintiffs' motion to exclude rebuttal expert Ms. Johnson (Dkt. # 135), and GRANTS in part and DENIES in part Plaintiffs' motion for summary judgment on affirmative defenses (Dkt. # 143).  The court also orders the parties to resume mediation pursuant to Local Rules W.D. Wash. CR 39.1(c)(6):

(1)     Mediation shall occur with James A. Smith, Jr., acting as mediator.  The mediation shall be scheduled at a time convenient to the parties, counsel, and the mediator, but will occur within 30 days of this order.

(2)     Prior to occurrence of mediation, the attorneys shall meet in good faith and discuss settlement in compliance with Local Rules W.D. Wash. CR 39.1(c)(2).  The meeting shall include lead counsel for the parties as well as all attorneys expected to

ORDER – 29

1  participate at trial.  The parties shall report to the mediator on their compliance with this

2  requirement prior to the occurrence of the renewed mediation.

3        (3)     Pursuant to Local Rules W.D. Wash. CR 39.1(c)(4)(E), all parties shall be

4  physically present at the renewed mediation, provided, however, that both members of a

5  marital community need not be in attendance.  Also, representatives of insurers having

6  authority to settle shall be physically in attendance at the next mediation.

7        Dated this 21st day of July, 2006.

8

9

10

11  JAMES L. ROBART
    United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER – 30